THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JAMES BREXTON, B42134, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:24-cv-01178-GCS |
| | ) | |
| SHAWNEE CORRECTIONAL CTR., | ) | |
| DARREN D. GALLOWAY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff James Brexton, an inmate of the Illinois Department of Corrections ("IDOC") currently detained at Shawnee Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Specifically, Plaintiff alleges that he is currently serving a 90-day term of segregation during which he is being deprived of all time out of his cell.

Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims.[1] *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed.  *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro*

---

[1]     The Court has jurisdiction to resolve Plaintiff's motions and to screen his Complaint due to his consent to the full jurisdiction of a magistrate judge (Doc. 10) and the limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memoranda of Understanding between the IDOC, Wexford, and this Court.

*se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

On February 28, 2024, Plaintiff began a 90-day term in segregation for a "203 drug/drug paraphernalia" offense. (Doc. 1, p. 2). He alleges that he is repeatedly being denied 1-hour a day of recreation because Defendant Warden Galloway has instructed staff that offenders serving segregation for a 203 offense shall not be allowed to attend the 1-hour recreation program. Plaintiff alleges his disciplinary offense was finalized by an adjustment committee on March 14, 2024. The punishment imposed was consistent with regulations and included 90 days in segregation, 6 months of phone restriction, and 6 months of contact visit restriction. Despite the imposition of punishment that fit the department rules, Plaintiff observed other offenders leave to attend recreation without him on March 15, 2024. He asserts that other offenders with 203 infractions were taken to recreation.  Plaintiff asked a sergeant if he could also attend, but he was told that per a memo from Warden Galloway, offenders with 203 infractions could not attend yard.

Plaintiff alleges that Warden Galloway has violated his rights to due process and equal protection by the restrictions on recreation. (Doc. 1, p. 3). He further explains he is 54 years old, and a 90-day term of segregation without any recreation or fresh air will cause his health to deteriorate. Plaintiff explains that he has existing neck and back conditions that are "presumably getting worse," though he does not explain specific symptoms. He further explains that his conditions are poor because he is locked in his cell 24 hours a day, he cannot get fresh air because the windows are broken and stuck

shut, he does not have hot water for sanitation or cleaning, he cannot make phone calls or exchange other correspondence, and he is only allowed to exchange his uniforms on a weekly basis. *Id.*

Plaintiff alleges that Galloway has failed to act in his official capacity by failing to investigate the denial of his rights during his 90-day segregation term. He further claims that he and his cellmate were informed on April 2, 2024, that the recreation restriction had been discussed via email by Warden Galloway and other staff. Warden Galloway confirmed the imposition of the recreation bar for offenders with 203 disciplinary offenses. In support of the complaint, Plaintiff included one grievance and one emergency grievance, and he alleges video camera footage would corroborate his allegations. (Doc. 1, p. 5). Plaintiff seeks monetary relief.

Based on the allegations in the Complaint, the Court designates the following counts:

> **Claim 1:**    **Fourteenth Amendment Due Process claim against Warden Galloway for imposing the additional punishment of no recreation time;**
>
> **Claim 2:**    **Eighth Amendment conditions of confinement claim against Warden Galloway for insisting on Plaintiff's current conditions of confinement during his 90-day segregation term;**
>
> **Claim 3:**    **Equal protection claim against Warden Galloway for imposing the restriction on some, but not all offenders, with a disciplinary offense for 203 — drugs/drug paraphernalia.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned

in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## PRELIMINARY DISMISSAL

Plaintiff named Shawnee Correctional Center as a defendant in this action, but an entity of the state is not a "person" for purposes of liability under § 1983, so this defendant is dismissed with prejudice. *See, e.g.*, *Thomas v. Illinois*, 697 F.3d 612, 613-614 (7th Cir. 2012) (noting that the state and state agencies are not suable "persons" within the meaning of § 1983).

## DISCUSSION

### Claim 1

To establish a due process claim related to disciplinary proceedings, an inmate must demonstrate: (1) the deprivation of a liberty interest; and (2) the procedures he was afforded were constitutionally deficient. *See Lisle v. Welborn*, 933 F.3d 705, 720 (7th Cir. 2019). Before the Court considers if Plaintiff was afforded adequate procedures at a disciplinary hearing, it will first consider if a liberty interest was even implicated by the punishment imposed. Short terms of segregation do not implicate a protected liberty interest absent truly abhorrent circumstances. *See, e.g.*, *Hardaway v. Meyerhoff*, 734 F.3d 740, 744 (7th Cir. 2013) (involving six-month disciplinary segregation alone); *Lekas v. Briley*, 405 F.3d 602, 605, 613 (7th Cir. 2005) (involving temporary loss of contact visitation

and restricted commissary); *Whitford v. Boglino*, 63 F.3d 527, 533 n.7 (7th Cir. 1995) (involving six-month disciplinary segregation and demotion to C grade). A plaintiff may also argue that the combination of disciplinary measures deprived him of a protected liberty interest. *See Kervin v. Barnes*, 787 F.3d 833, 836 (7th Cir. 2015).

Here, Plaintiff's term of segregation is 90 days. Such a short term is not sufficient to invoke a protected liberty interest absent truly exceptional circumstances. *See, e.g.*, *Obriecht v. Raemisch*, No. 13-2459, 565 Fed. Appx. 535, 540 (7th Cir. May 23, 2014) (finding that 78 days sleeping on a mattress placed directly on a wet floor was deplorable but did not invoke a liberty interest); *Kervin*, 787 F.3d at 836-837 (finding that considerably less than six months in harsh segregation may invoke a liberty interest, but concluding that 30 days without telephone, commissary, or the grievance procedure were not sufficient to invoke a liberty interest). Here, the conditions that Plaintiff describes are not so exceptional to immediately invoke a protected liberty interest. He also does not allege that the procedures afforded at his disciplinary hearing were insufficient, though perhaps he is suggesting the Warden has since added a disciplinary sanction (no recreation) without following any process. Regardless, the short term of the segregation and associated consequences are insufficient to invoke a liberty interest, so Claim 1 will be dismissed. This does not foreclose a finding that the conditions violate the Eighth Amendment.

## Claim 2

To establish a conditions of confinement claim, an inmate must establish (1) a deprivation that is, from an objective standpoint, sufficiently serious that it results in the

denial of the minimal civilized measure of life's necessities, and (2) prison officials are deliberately indifferent to this state of affairs. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 824 (1994)). Conditions may be considered collectively when analyzing a conditions of confinement claim, and the duration of the allegedly harmful conditions is relevant to the existence of an Eighth Amendment violation. *Id.* Many conditions standing alone may not be sufficient to give rise to an Eighth Amendment conditions of confinement claim, but they must also be considered collectively. *See Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006).

Plaintiff alleges that beginning on March 14 or 15, 2024, he commenced a 90-day term of segregation, which now includes the total deprivation of recreation time. Specifically, he claims that Warden Galloway has instructed staff to deprive inmates convicted of a 203 offense of the 1-hour of recreation per day that other segregation inmates receive, and he has refused to address Plaintiff's grievances about the same issue. He claims that without recreation or fresh air, his existing back and neck injuries will presumably get worse, though he does not explain how this has impacted him thus far. The deprivation of recreation can in extreme instances amount to an Eighth Amendment violation. This is particularly true where there is no opportunity for social interactions or physical exercise.

Plaintiff states he has a cell mate, so he is not being deprived of all sensory stimuli, which is usually one of the most concerning aspects of continuous in-cell confinement. Nevertheless, Plaintiff alleges that he cannot get any exercise, and he believes being sedentary without any fresh air or exercise will cause his pre-existing conditions to

deteriorate. He identifies additional concerns including a lack of hot water, the inability to open the window, and laundry access just once a week as problematic. None of these conditions taken alone are enough to make out a claim. The laundry issue is certainly not enough even combined with other things. *See, e.g.*, *Myers v. Indiana Department of Corrections*, No. 15-3196, 655 Fed. Appx. 500, 504 (7th Cir. July 5, 2016) (discussing the parameters of potential conditions of confinement claims concerning laundry, and finding an inmate failed to state such a claim where he alleged the clothes he received were not as clean as desirable for four years). However, the Court will read the complaint broadly and will assume for now that the combined impact of no exercise, no fresh air, and no hot water to wash up may be sufficient to make out an Eighth Amendment conditions of confinement claim. Plaintiff alleges that he has twice alerted Defendant Galloway to his problems, and in fact that Galloway has confirmed to staff his intention to deprive Plaintiff of recreation. These allegations are sufficient to substantiate Galloway's personal involvement at this early juncture.

## Claim 3

In Claim 3, Plaintiff alleges that Galloway violated his right to equal protection by denying him the 1-hour of recreation per day while in segregation. He alleges that he observed other offenders who had disciplinary tickets for a 203 offense being escorted to yard, but when he asked a staff member if he could attend recreation, he was told those with a 203 conviction could not attend yard. Staff later reiterated to Plaintiff that those with a 203 conviction could not attend recreation.

Given than Plaintiff claims other offenders with 203 convictions have attended yard, this is an equal protection claim premised on a "class of one" theory, which alleges that an individual has "intentionally been treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000). "Prisoners do not surrender their rights to equal protection at the prison gate. Unequal treatment among inmates, however, is justified if it bears a rational relation to legitimate penal interest." *Williams v. Lane*, 851 F.2d 867, 881 (7th Cir. 1988). The Seventh Circuit has noted in recent years that they are unsettled on the exact nature of proof required for a class-of-one claim, but they recently stated that, "a class-of-one plaintiff [must] plead and prove that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." *Frederickson v. Landeros*, 943 F.3d 1054, 1066 (7th Cir. 2019) (the presence of animus is powerful evidence of potentially irrational government conduct, government conduct motivated solely by personal dislike is the canonical example of irrationality and arbitrariness). *See also Jordan v. Cockroft*, No. 12-1633, 490 Fed. Appx. 813, 815-816 (7th Cir. Aug. 1, 2012) (noting the Court is divided on the necessity of showing illegitimate animus but finding that a plaintiff must at least show intentionally discriminatory treatment).

Here, Plaintiff falls just short of pleading a class of one equal protection claim against Defendant Galloway. Although he has identified what he believes is differential treatment for no reason—some inmates with 203 offenses go to recreation while others do not—he has not fairly attributed this difference in circumstances to intentional

conduct by Defendant Galloway. To the contrary, he indicates staff told him on the day he thought he observed this difference that no offender with a 203 conviction could attend recreation, and they again told him at a later date that Galloway had confirmed no offender with a 203 conviction was to attend recreation. With this information it appears that Galloway is unequivocal—all those convicted of a 203 cannot attend yard. Thus, Galloway is not intentionally treating offenders differently. If something different is happening in the cellhouse, it appears that it would be attributable to the personal conduct of someone other than Galloway. Accordingly, Plaintiff may not proceed against Galloway for an equal protection claim.

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has moved for recruited counsel, though he has not provided any explanation for why he believes he needs counsel at this juncture, nor has he described his efforts to recruit his own counsel. (Doc. 3). There is  no right to the appointment of counsel in civil matters. *See Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). When presented with a request to appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself [.]" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Plaintiff has not yet provided any proof of his own efforts to secure counsel, so if he reapplies for counsel later, he should provide evidence of his own efforts. Additionally, Plaintiff's case is still at the earliest stages of litigation, and the next steps will include a basic exchange of information governed by the Court's future scheduling order. As such,

the Court finds Plaintiff competent to proceed on his own for now, and his Motion (Doc. 3) is **DENIED**.

### DISPOSITION

**IT IS HEREBY ORDERED THAT Claim 2** of the Complaint (Doc. 1) survives against Defendant Darren D. Galloway. By contrast, **Claims 1 and 3** are dismissed for failure to state a claim. Plaintiff has failed to state a claim against Shawnee Correctional Center, and the Clerk of Court is **DIRECTED** to **TERMINATE** this party.

The Clerk of Court is **DIRECTED** to prepare for Defendant Darren D. Galloway: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. *See* FED. R. CIV. PROC. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard order under the Health Insurance Portability and Accountability Act because this case may involve the exchange of medical records.

**IT IS SO ORDERED.**

**DATED:  May 30, 2024.**

Digitally signed by Judge Sison
Date: 2024.05.30 13:20:17 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.