UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES BREXTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:24-cv-01178-GCS |
| | ) |
| DARREN D. GALLOWAY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Plaintiff James Brexton, an inmate of the Illinois Department of Corrections ("IDOC"), brings this civil rights action pursuant to 42 U.S.C. § 1983 for violations of his Eighth Amendment rights related to deprivations of recreation time, fresh air, and hot water during a 90-day term of segregation at Shawnee Correctional Center ("Shawnee"). (Doc. 1). Defendant Darren D. Galloway ("Warden Galloway") argues that summary judgment should be granted in his favor because Plaintiff failed to exhaust his administrative remedies prior to filing suit. (Doc. 44, 45). As explained below, the Court agrees with Warden Galloway and **GRANTS** the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies. (Doc. 44).

PROCEDURAL BACKGROUND

On April 26, 2024, Plaintiff brought this suit related to unconstitutional conditions of confinement he experienced while in segregation at Shawnee. (Doc. 1). Plaintiff alleges that on February 28, 2024, Plaintiff began a 90-day term in segregation for a 203

Page **1** of **10**

drug/drug paraphernalia ("203") offense while incarcerated at Shawnee. (Doc. 1, p. 2). He was denied his 1-hour a day of recreation time while in segregation because Warden Galloway instructed staff that offenders serving segregation for a 203 offense would not be allowed to attend the 1-hour recreation program. *Id.* However, Plaintiff observed other offenders with 203 infractions were allowed to participate in recreation. *Id.* When Plaintiff asked a sergeant if he could also attend recreation, he was told that per a memo from Warden Galloway, offenders with 203 infractions could not attend yard. *Id.* Furthermore, because Plaintiff was locked in his cell 24 hours a day, he could not get fresh air due to the broken windows, he did not have hot water for sanitation or cleaning, he could not make phone calls or exchange other correspondence, and he was only permitted to exchange his uniforms on a weekly basis. *Id.* at p. 3. Because Plaintiff was 54 years old, a 90-day term of segregation without any recreation or fresh air caused his health to deteriorate. *Id.* His existing neck and back conditions "presumably" worsened in segregation. *Id.*

On May 30, 2024, the Court completed its preliminary review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A and allowed Plaintiff to proceed on the following count against Warden Galloway:

> **Count 2:** **Eighth Amendment conditions of confinement claim against Galloway for insisting on Plaintiff's current conditions of confinement during his 90-day segregation term.**

(Doc. 15, p. 3).

On November 12, 2024, Defendant Galloway filed a Motion for Summary

Judgment on the issue of exhaustion of administrative remedies. (Doc. 44). On February 7, 2025, Plaintiff filed a response in opposition. (Doc. 52). On February 21, 2025, Warden Galloway replied. (Doc. 53). Accordingly, the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies is now ripe for the Court's review.

### FACTUAL BACKGROUND

Based on a review of Plaintiff's grievance record, Warden Galloway has identified two grievances relevant to the claims in this case: Grievance Nos. K19-24-04-33 and K19-24-04-103. (Doc. 45-4). The Court will recount the content of those grievances below:

**A.    Grievance No. K19-24-04-33**

Plaintiff submitted this grievance on April 1, 2024. (Doc. 45-4, p. 1). Plaintiff complained that he had been denied 1 hour outside recreational activity and fresh air, and he was without hot water. *Id.* at p. 1-2.

This grievance was received as an emergency on April 5, 2024, but was deemed a non-emergency on the same date. (Doc. 45-4, p. 1-2). Plaintiff never re-submitted this grievance for traditional first-level review after it was deemed non-emergent. *Id.*

**B.    Grievance No. K19-24-04-103**

Plaintiff submitted this grievance on March 31, 2024. (Doc. 45-4, p. 3). Plaintiff alleged that he was denied the right to 1 hour a day of program recreation activity due to discrimination. *Id.* at p. 3-4. He further complained that he was confined to his cell for 24 hours a day without fresh air or hot water for sanitation. *Id.*

The grievance was received for first-level review on April 12, 2024. (Doc. 45-4, p. 3). It received a first-level response on May 30, 2024. *Id.* Plaintiff never submitted this

grievance for second level review after receiving the first-level response. *Id.*

## LEGAL STANDARDS

Summary judgment is proper when a moving party cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). To survive a motion for summary judgment, the non-moving party must provide admissible evidence which would allow a reasonable jury to find in his or her favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Generally, in determining the outcome on a motion for summary judgment, the Court's role is not to evaluate the weight of the evidence, witness credibility, or determine the truth of the matter, but rather to determine whether a genuine issue of material fact exists. *See National Athletic Sportswear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

However, in *Pavey v. Conley*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies are not required to be decided by a jury but are to be determined by the judge." 544 F.3d 739, 740-741 (7th Cir. 2008). Therefore, it is the Court's duty to evaluate whether a prisoner has exhausted his or her administrative remedies when the affirmative defense of non-exhaustion is raised. If the Court determines a prisoner did not exhaust administrative remedies, the Plaintiff is given the opportunity to exhaust should time still permit, or if the failure to exhaust was innocent.[1] *Id.* at 742. Alternatively, if the Court determines that the failure to

---

1       *Pavey* determined that an "innocent" failure to exhaust administrative remedies includes situations where prison officials prevent prisoners from pursuing exhaustion of their administrative remedies. 544 F.3d at 742. Moreover, if an inmate submits a grievance and does not receive a response, the inmate's attempts at exhaustion will be deemed frustrated, and the inmate will be permitted to proceed with the lawsuit. *See, e.g., Walker v. Sheahan*, 526 F.3d 973, 979

exhaust was the prisoner's fault, the case is terminated. *Id.*

Under the Prison Litigation Reform Act ("PLRA"), which governs lawsuits filed by prisoners, "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This supports the PLRA's statutory purpose of "afford[ing] correction officials [the] time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). Further, it provides prison administrations an opportunity to address problems, reduce damages, and further understand factual disputes that may arise in litigation. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002).

When attempting to exhaust administrative remedies, prisoners must follow their prison's administrative rules. *See Pozo*, 286 F.3d at 1023. As an inmate confined within the IDOC, Plaintiff is required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("IDOC Grievance Procedures") to properly exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The Seventh Circuit requires strict adherence to a prison's grievance procedures to satisfy the exhaustion requirement under the PLRA. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Accordingly, a prisoner cannot satisfy the exhaustion requirement by filing untimely or filing procedurally defective

---

(7th Cir. 2008) (noting that an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response).

grievances. *See Woodford*, 548 U.S. at 83. Nor may a prisoner file a lawsuit while the prisoner is simultaneously proceeding through the required grievance process. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

To initiate the grievance process, the IDOC Grievance Procedures first require that inmates file a grievance with a Counselor at their correctional institution within sixty days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). In the grievance, the prisoner must provide: "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." *See* 20 ILL. ADMIN. CODE § 504.810(a). If the prisoner is not satisfied with the Counselor's response, the prisoner can then submit a formal grievance to the prison's Grievance Officer. *Id.* at (a)-(b). The Grievance Officer must review the grievance and provide a written response to the inmate within sixty days of receipt of the grievance. *See* 20 ILL. ADMIN. CODE § 504.830(a) & (e). When reasonably feasible under the circumstances, the Grievance Officer must report his or her findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *Id.* The CAO will review the findings and recommendations from the Grievance Officer and advise the inmate of his or her decision in writing. *Id*. If the prisoner is not satisfied with the CAO's decision, the prisoner can then formally appeal to the Director through the Administrative Review Board ("ARB")

within thirty days of the CAO's decision. *See* ILL. ADMIN. CODE § 504.850(a). The inmate must attach copies of the Grievance Officer's report and the CAO's decision to the appeal. *Id.* The ARB then submits its written recommendation to the Director, who is responsible for issuing the IDOC's final decision within six months. *See* 20 ILL. ADMIN. CODE § 504.850(d)–(e).

A separate procedure exists for emergency grievances. Inmates may file emergency grievances directly to the CAO. *See* 20 ILL. ADMIN. CODE § 504.840(a). The CAO will determine if there is "a substantial risk of imminent personal injury or other serious or irreparable harm" to the inmate that warrants the grievance being addressed as an emergency. *Id.* If the CAO categorizes the grievance as an emergency, the CAO shall "expedite the process of the grievance and respond to the offender indicating what action shall be or has been taken." *See* 20 ILL. ADMIN. CODE § 504.840(b). If the CAO determines that the grievance is not an emergency, the inmate will be notified. *See* 20 ILL. ADMIN. CODE § 504.840(c). In these circumstances, notification will be made in writing that the inmate should "resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.* When an inmate appeals a grievance that has been deemed emergent by the CAO, the ARB "shall expedite the processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

Shawnee's grievance procedure follows the Illinois Administrative Code noted above and is made available to prisoners in accordance with Department Rule 504F, Grievance Procedures for Committed Persons. The procedure also notes if a prisoner can establish the grievance was not timely filed for good cause, then the grievance can still be

considered. Further, prisoners may receive assistance in completing their grievances. For example, support is provided to prisoners who cannot prepare the grievance on their own or who are "impaired, disabled, or unable to communicate in the English language."

## DISCUSSION

Warden Galloway asserts that Plaintiff failed to exhaust his administrative remedies because he filed suit before completing the exhaustion process. (Doc. 44, 45). Specifically, Warden Galloway argues that, while the record reflects that Plaintiff initiated the grievance process regarding the allegations in this case, he did not wait to complete the facility and ARB reviews before filing his complaint. *Id.* Plaintiff counters that he did his part to exhaust his administrative remedies based on the inadequate grievance process at the facility. (Doc. 52). The Court agrees with Defendant.

Plaintiff cannot sue first and exhaust later. *See Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020). And that is precisely what Plaintiff did here. Plaintiff's 90-day term of segregation began on February 28, 2024, (Doc. 1), and he submitted two grievances regarding the conditions he experienced while there: Grievance Nos. K19-24-04-33 and K19-24-04-103. (Doc. 45-4, p. 1-4). Plaintiff submitted Grievance No. K19-24-04-103 on March 31, 2024. *Id.* at p. 1. He did not receive a first level response until May 30, 2024. *Id.* However, he filed this suit on April 26, 2024. (Doc. 1). Similarly, Plaintiff submitted Grievance No. K19-24-04-33 on April 1, 2024, but he did not re-submit it for first level review after it was deemed non-emergent on April 5, 2024. (Doc. 45-4, p. 3). Based on these facts, Plaintiff's grievances were clearly not exhausted prior to him commencing this lawsuit.

Nevertheless, Plaintiff argues that the Court should excuse his failure to exhaust because he submitted both grievances and a written letter of appeal to the ARB on June 5, 2024. (Doc. 52, p. 1). He claims that he delivered the envelope to housing unit counselor Andrew Causey, but received no response, even after mailing a follow-up inquiry to the ARB in September 2024. *Id.* Warden Galloway argues that there is no evidence to support Plaintiff's claims. (Doc. 53, p. 3).

Even accepting Plaintiff's version of events, his argument is unpersuasive for two reasons. First, Plaintiff's claim that he submitted his grievances on appeal to the ARB on June 5, 2024, only serves to demonstrate that he did not fully exhaust his grievances prior to filing suit on April 26, 2024. Second, as Warden Galloway points out, Plaintiff failed to follow proper grievance procedures. Therefore, even if the ARB had received Plaintiff's appeal, it would have been appropriately denied on procedural grounds. *See, e.g., Woodford v. Ngo*, 548 U.S. 81, 83 (2006) (explaining that a prisoner cannot satisfy the exhaustion requirement by filing procedurally defective grievances).

Moreover, Plaintiff does not dispute the relevant grievances identified by Warden Galloway or otherwise allege he filed any other grievances which did not receive responses. And, even if Plaintiff had alleged other grievances, there plainly would not have been sufficient time for exhaustion, as he filed suit fewer than 60 days after his 90-day term of segregation began. An evidentiary hearing is not necessary under these circumstances, where there can be no reasonable dispute that Plaintiff failed to exhaust his administrative remedies. *See, e.g., Doss v. Gilkey*, 649 F.Supp.2d 905, 912 (S.D. Ill. 2009) (explaining that a hearing is not required where "there are no disputed facts regarding

exhaustion, only a legal question."). [2] Accordingly, this case is dismissed without prejudice for failure to exhaust administrative remedies. *See, e.g.*, *Chambers*, 956 F.3d at 984 (stating that "[a] premature lawsuit must be dismissed without prejudice, and the prisoner must file a new suit after fully exhausting administrative remedies.").

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Warden Galloway's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies. (Doc. 44). Plaintiff's claims are hereby **DISMISSED** without prejudice.

**IT IS SO ORDERED.**

**DATED: July 14, 2025.**

Gilbert C Sison
Digitally signed by Gilbert C Sison
Date: 2025.07.14 12:18:33 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

---

[2]  The Supreme Court recently altered the Court's ability to conduct evidentiary hearings under *Pavey*. In *Perttu v. Richards*, 145 S.Ct. 1793 (2025), the Supreme Court held that if a factual dispute on exhaustion is intertwined with a factual dispute that goes to the merits of a plaintiff's underlying substantive claim, a jury trial is required on the intertwined issue. No such intertwinement issues are implicated here. Thus, *Perttu* does not affect the appropriateness of this dismissal.